IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| PLAINTIFF(S)<br>Ajay Tiwari | ) <br> ) <br> ) | CIVIL ACTION No.: 1:24-cv-07185-MGL-SVH |
| vs. | ) <br> ) | COMPLAINT<br>JURY DEMAND |
| DEFENDANT(S)<br>Battelle Savannah River<br>Alliance, LLC | ) <br> ) <br> ) <br> ) <br> ) | |

## STATEMENT OF THE CASE

Plaintiff, Ajay Tiwari (hereinafter "Plaintiff"), brings this action against Defendant Battelle Savanah River Alliance, LLC (hereinafter "Defendant" or "BSRA") for money damages in connection with the following conduct: (1) age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), (2) pay discrimination under the equal Pay Act (EPA), (3) retaliation, (4) wrongful termination in violation of public policy, (5) breach of contract, (6) Breach accompanied by Fraud, (7) Fraud, (8) Fraud in the inducement, (9) intentional infliction of emotional distress (10) outrage and (11) Negligent Misrepresentation.

Plaintiff, an experienced an accomplished senior engineer with over 30 years of professional experience, was wrongfully terminated by defendant under the pretext of a security clearance issue, which was likely caused by Defendant in their communications with DOE – inducing Plaintiff to give up his dual citizenship and causing other harm. Defendant's discriminatory practices, including salary disparities, denial of training opportunities, and the termination and replacement of plaintiff with a significantly younger and less experienced worker, along with other hostile action demonstrate a pattern of age-based bias. Plaintiff seeks actual damages, compensatory damages, liquidated damages, and punitive damages, and attorney's fees and costs along with any other relief deemed just improper by the court.

## INTRODUCTION

1. Plaintiff was employed by Defendant as a Senior Engineer from August 2020 until May 23, 2023. During his employment, Plaintiff consistently performed his job duties at or above a satisfactory level.

2. Despite Plaintiff's exemplary performance and qualifications, Defendant, because of Plaintiff's age, engaged in discriminatory practices and orchestrated efforts to undermine Plaintiff's DOE security clearance process. Defendant intentionally created barriers to Plaintiff's clearance, manipulated the process to ensure failure, and unnecessarily demanded that Plaintiff renounce his dual citizenship, falsely claiming it was a requirement.

3. Defendant's actions were designed to force Plaintiff out of the company, believing he would not renounce his citizenship and would instead resign. When Plaintiff complied with the demand in good faith, the Defendant used the incomplete DOE process as a pretext to terminate him and replace him with a significantly younger, less qualified employee.

4. The plaintiff brings this action to recover for the damages he sustained as a result of the Defendants unlawful and intentional conduct.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, Ajay Tiwari, is a citizen of the United States and resident residing in North Augusta, South Carolina.

6. Defendant Battelle Savannah River Alliance, LLC (hereinafter "BSRA"), is a foreign corporation authorized to do business in South Carolina existing under the laws of the State of Delaware.

7. This Court has jurisdiction under 28 U.S.C. § 1331, as this action arises under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, et seq.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices occurred within this District, and Defendant conducts substantial business within this District.

## FACTUAL ALLEGATIONS

9.      Plaintiff began his employment at Savannah River National Laboratory (hereinafter "SRNL"), the predecessor to BSRA, in August 2020 as a Senior Engineer. Although the position for which the Plaintiff was hired required him to obtain a security clearance, he did not need a security clearance to perform his job duties. From the date of hire and right up to his termination on May 23, 2023, none of Plaintiff's work required him to access classified information, nor was his office located in a building that required security clearance. Prior to the takeover of the site by BSRA there was no issue with Plaintiff's dual citizenship.

10.     Plaintiff consistently performed his job duties at or above a satisfactory level, as evidenced by positive performance reviews.

11.     Plaintiff's Fiscal Year 2021 performance review praised his expertise in PLC programming and his role in setting up virtual factories for hardware-in-the-loop PLC labs.

12.     His Fiscal Year 2022 performance review noted his success in designing and building control systems for advanced testing and meeting all professional expectations.

13.     Plaintiff holds both a master's degree in electrical engineering and an MBA, along with over 30 years of professional experience, including 10 years working at nuclear facilities.

14.     Plaintiff's performance reviews consistently reflected exceptional performance, including recognition for his expertise in Distributed Control Systems (DCS), leadership capabilities, and contributions to advanced testing systems.

### Plaintiff's Contract with Defendant

15.     On or about April 30, 2021, Defendant entered into a binding agreement with Plaintiff, contingent upon Plaintiff maintaining compliance with SRNL polices, adhering to DOE requirements, and fulfilling the duties of his position.

16.     Plaintiff complied with all contractual obligations, maintained satisfactory performance, and acted in good faith to meet the requirements of his role.

17.     As a forward to the contract plaintiff received a letter from the Lab director Vahid Majidi stating that Battelle Savannah River Alliance, LLC ("BSRA"), "is honored to have the

opportunity to manage and operate Savannah River National Laboratory ("SRNL"), and we are pleased to extend you this formal offer of employment to join our BSRA team. BSRA welcomes you as an employee effective June 21, 2021 (your "Start Date")."

18. The letter also stated that "Your offer includes standard benefits and leave accruals. We will be sending more information about the benefits in separate communications. However, benefits will remain similar (if not identical) to the benefits currently offered to SRNL employees.

19. The letter additionally stated that employment with BSRA is "at will" and may be terminated with or without cause by either yourself or BSRA at any time. This offer is also contingent upon you meeting, and continuing to meet, the conditions identified in the Job Offer Contingencies listed below as well as SRNL policies and procedures.

20. The contract specifies that employment is contingent upon compliance with SRNL policies, maintenance of qualifications, and adherence to conflict of interest and code of conduct requirements.

21. The agreement emphasizes trust confidence and confidentiality creating under South Carolina law an implied duty for the defendant to act fairly and avoid sabotaging plaintiffs DOE process.

22. Paragraph 12 of the agreement states, "I acknowledge and agree that, at all time during and, where applicable, following my employment with the company, I have the duty to remain free have conflicts of interest and the duty to prevent the appearance of conflicts of interest a conflict of interest exists when an employee has a financial interest, personal activity, or relationship that could impair their ability to act impartially and in the best interest of the company."

23. By signing, the plaintiff agreed to the terms under the assumption that the defendant would uphold its obligation in good faith, therefore any misrepresentations about the nature of plaintiff's termination undermine mutual trust required by the contract.

24. The contract states explicitly that it is governed by South Carolina Law.

**Change in Management and Disparate Treatment**

25.     In June 2020, SRNS management transitioned to BSRA. Following this transition, Plaintiff immediately witnessed and experienced a pattern of older employees being terminated and replaced by younger workers.

26.     Defendant implemented policies and practices that disproportionately disadvantaged older employees and drove them out of the ranks.

27.     Defendant's equity adjustment plan granted larger salary increases to younger employees while excluding older, more experienced workers, including Plaintiff.

28.     During management update meetings in 2022, the Lab Director, Dr. Zahid Majidi, took a victory lap and displayed slides showing a significant reduction in the median age of employees since the management change.

29.     In continuation of BSRA's campaign to drive out older workers, Plaintiff was excluded from BSRA's equity adjustment plan, which disproportionately provided larger salary increases to younger, less experienced employees.

30.     For example, Plaintiff is aware that a 20-something engineer with a non-engineering bachelor's degree and less than four years of experience received two increases in pay totaling over $20,000.00 despite only being employed for less than six months along with two other recent hires who also received similar increases. Despite Plaintiff's advanced education and extensive experience, and well received work, he received no equitable adjustment, and a total salary increase of only $7,000 during his entire tenure.

31.     Plaintiff was also denied training opportunities and resources that were freely provided to younger employees, such as external training courses and conferences.

32.     Additionally, Plaintiff was assigned an office a considerable distance away from the rest of his team, who shared four offices adjacent to each other. The plaintiff was isolated and alienated from the younger members of his team and missed out on many ad hoc meetings and communications. The Plaintiff's office was furnished with outdated equipment and furniture, while younger team members were given state of the art equipment and new furniture.

33.     The day after Defendant's termination the office was refurbished with new furniture and equipment for a new 24-year-old team member.

### The Campaign to force Plaintiff to resign

34. Defendant embarked on a calculated campaign to force Plaintiff to resign, employing tactics designed to erode his confidence, isolate him professionally, and render his continued employment untenable.

35. From the outset, Defendant's actions were not merely discriminatory, but part of a deliberate strategy to push plaintiff toward voluntary departure. Defendant laid a trap, banking on Plaintiff's refusal to comply as grounds for removal. When Plaintiff acted in good faith and complied the Defendant escalated their campaign.

36. The first escalation was when Defendant demanded that Plaintiff renounce his New Zealand citizenship as a condition of his employment, a requirement not imposed by DOE policy or part of SNRL policies which were incorporated into his offer by BSRA.

37. Plaintiff believes this demand was intended to create another pretext for his termination, as no such requirement was previously made of younger employees or similarly situated workers.

38. Upon information and belief, Defendant escalated their campaign, manipulating the security clearance process to fabricate a pretext for termination.

39. At every step, Defendant's intent was clear: to strip Plaintiff of his dignity, diminish his contributions, and compel him to walk away from his career under the weight of contrived obstacles.

### Pretextual Termination, Replacement and Discriminatory Intent

40. On May 23, 2023, Plaintiff's supervisor escorted the Plaintiff to the BSRA Badge office where he was met by a DOE personnel member who hand delivered to him a letter, purported to be certified from the Department of Energy dated May 11, 2023. The DOE personnel reviewed the contents of the letter and informed the Plaintiff of his rights under regarding the same. Moments later, an HR representative of the Defendant arrived with a termination letter to deliver to the Plaintiff and proceeded to tell the Plaintiff that he was being terminated, and the Plaintiff was then escorted off the premises.

41. On May 23, 2023, Plaintiff was terminated for "inability to obtain a security

clearance," despite his application still being under review.

42. Administrative review does not equate to suspension or denial of security clearance. DOE confirmed that Plaintiff's application had not been denied and was still pending adjudication at the time of his termination.

43. Defendant falsely claimed that the federal government had suspended Plaintiff's clearance application to create a pretext for termination.

44. Defendant had a duty to support and assist with Plaintiff's security clearance process within the guidelines set forth in the DOE procedures and failed to discharge this duty.

### Charge of Discrimination

45. After termination, Plaintiff filed a charge of age discrimination with the EEOC on, Charge No. 415-2023-01407, alleging violations of the ADEA.

46. Plaintiff received a Right to Sue letter from the EEOC attached hereto as EXHIBIT A, showing this action is timely filed.

### COUNT 1
*Age Discrimination in Violation of the ADEA*

47. Plaintiff incorporates by reference paragraphs 1–46 as if fully set forth herein.

48. Defendant discriminated against Plaintiff on the basis of age in violation of 29 U.S.C. § 623 by:

   a. Excluding Plaintiff from equitable salary adjustments provided to younger employees;

   b. Denying Plaintiff training and resources provided to younger employees;

   c. Terminating Plaintiff under the pretext of a security clearance issue while replacing him with a significantly younger worker.

49. Defendant's discriminatory conduct was willful, intentional, and in reckless disregard of Plaintiff's rights under the ADEA.

50. As a direct and proximate result of defendant's actions plaintiff experienced severe emotional distress including but not limited to anxiety depression and humiliation loss of professional confidence and fear of uncertainty about his career and financial security and financial damages all in an amount to be proven at trial.

## COUNT 2
*Violation of the Equal Pay Act*

51. Plaintiff incorporates paragraphs 1-50 as if fully set forth herein.

52. Defendant paid Plaintiff less than younger employees with similar or lesser qualifications for performing comparable work. (NOTE TO CLIENT: This should stay as written)

53. Defendant's actions violated the Equal Pay Act, 29 U.S.C. § 206(d).

54. As a result, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT 3
*Retaliation*

55. Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

56. Plaintiff opposed discriminatory practices, including pay disparities and unfair treatment, and Defendant retaliated by terminating his employment under false pretenses.

57. As a result, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT 4
*Wrongful Termination in Violation of Public Policy*

58. Plaintiff incorporates paragraphs 1-57 as if fully set forth herein.

59. Defendant's requirement that Plaintiff renounce his citizenship violated public policy, and his termination was based on discriminatory practices contrary to federal and state laws.

60. As a result, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT 5
*Hostile Work Environment*

61. Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

62. Defendant subjected plaintiff to a hostile work environment and violation of the age discrimination in employment act (ADEA), 29 U.S.C. 621, § et seq.

63. Defendants conduct included systematically favoring younger employees in pay

training and advancement opportunities it also included publicly emphasizing the reduction in median age among staff reinforcing an aged bias workplace culture and isolating plaintiff and undermining his professional contributions as well as imposing unnecessary and unreasonable requirements such as renouncing his dual citizenship to create pretextual grounds for his termination.

64. Defendant's actions were severe and pervasive, altering the conditions of the plaintiff's employment and creating an environment of intimidation, humiliation and exclusion.

65. Defendant's conduct was willful intentional and in reckless disregard of plaintiff's rights.

66. As a direct and proximate result of defendant's hostile work environment, plaintiff suffered damages, including emotional distress, lost earnings and professional harm.

67. As a result, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT 5
*Breach of Contract*

68. Plaintiff incorporates paragraphs 1-67 as if fully set forth herein.

69. Plaintiff complied with all contractual obligations, maintained satisfactory performance and acted in good faith to meet the requirements of his role.

70. defendant breached the agreement by falsely claiming that plaintiff failed to meet the DOE security clearance requirement, despite his application remaining under administrative review.

71. The defendant further violated the agreement by demanding that plaintiff renounce his dual citizenship, which was not a DOE requirement and was unnecessary for his role defendant's actions directly resulted in plaintiff's termination and the deprivation of his rights under the contract.

72. The defendant misrepresented to plaintiff that his dual citizenship posed a barrier to obtaining a DOE security clearance pressuring him to renounce his citizenship unnecessarily.

73. The defendant also misrepresented to plaintiff his termination was based on his inability to obtain a security clearance, despite DOE confirming that his application had not been denied or suspended.

74. defendant engaged in fraudulent conduct by fabricating obstacles to plaintiffs

9

security clearance process, including providing false or misleading information to the DOE defendants demand for plaintiff to renounce his citizenship was part of a scheme to coerce him into resigning, knowing that such a requirement was not supported by DOE policy.

75. Defendants demand to renounce his citizenship was part of a scheme to coerce him into resigning, knowing that such a requirement was not supported.

76. Defendant's fraudulent actions were intended to create pretext for his termination and to replace plaintiff with a younger less experienced employee.

77. plaintiff relied on defendant's fraudulent actions and misrepresentations in good faith and to his detriment resulting in financial professional and emotional harm.

78. These misrepresentations were material to plaintiff's employment and were made intentionally to create pretext for termination thereby breaching the agreement.

79. As a result, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT 6
*Breach accompanied by Fraud*

80. Plaintiff incorporates paragraphs 1-79 as if fully set forth herein.

81. Defendant engaged in fraudulent conduct by fabricating barriers to plaintiffs DOE security clearance and misrepresenting his status to DOE personnel.

82. Defendant's actions were intended to force plaintiffs out of the company under false pretenses, enabling his replacement with the younger employee defendants fraudulent breach caused plaintiff financial professional and emotional harm entitling him to compensatory and punitive damage.

## COUNT 7
*Fraud in the inducement*

83. Plaintiff incorporates paragraphs 1-82 as if fully set forth herein.

84. Defendant knowingly made false and material representations to plaintiff regarding the terms and conditions of his employment, including that his dual citizenship would not impact his ability to secure the necessary DOE security clearance that the defendant would act in good faith to support plaintiffs application for security clearance and that the plaintiff would receive fair and equitable treatment including access to pay adjustments training

opportunities similar to those provided to other employees.

85. Defendants intentionally omitted material facts including its intent to demand plaintiff renounces citizenship knowing this demand was unsupported by policy and was likely to pressure plaintiff into resigning or create pretext for his termination.

86. Plaintiff relied on defendant's misrepresentations in good faith when he accepted defendants offer of employment continued to comply with defendant's unreasonable demands and worked diligently to meet all stated job qualifications including pursuing his DOE security clearance.

87. Defendant's conduct was fraudulent, willful and in reckless disregard of plaintiff's rights and the truth as defendant never intended to support plaintiff's security clearance process design the circumstances to create barriers to plaintiff's success and ultimately replaced him with a younger less experienced employee.

88. as a direct and proximate result of defendant's fraud plaintiff suffered damages including loss of employment associated wages and benefits emotional distress and reputational harm and costs associated with complying with Defendant's unreasonable demands as well as damage thereto.

## COUNT 8
*Intentional infliction of emotional distress*

89. Plaintiff incorporates paragraphs 1-88 as if fully set forth herein.

90. Defendant engaged in extreme and outrageous conduct with the intent to cause or with reckless disregard for the likelihood of causing severe emotional distress to plaintiff defendants actions included but were not limited to systematically excluding plaintiff from salary adjustments and training opportunities offered to younger employees despite his own qualifications and performance publicly emphasizing a reduction in the median age of employees demanding that plaintiff renounce his dual citizenship misrepresenting that plaintiffs DOE security clearance application had been denied or suspended to justify termination and orchestrating barriers to plaintiffs success replacing him with younger less experienced worker after falsely terminating him.

91. Defendant's conduct was extremely egregious and exceeded the bounds of decency tolerated in a civilized society.

92. Defendant acted intentionally or with reckless disregard for the probability that its actions would cause plaintiff to suffer emotional harm.

93. As a direct and proximate result of defendant's actions plaintiff experienced severe emotional distress including but not limited to anxiety depression and humiliation loss of professional confidence and fear of uncertainty about his career and financial security.

94. Defendant's conduct was willful wanton and malicious warranting an award of punitive damage to deter such conduct in the future.

## COUNT 9
*Outrage*

95. Plaintiff incorporates paragraphs 1-94 as if fully set forth herein.

96. As a direct and proximate result of defendant's outrageous conduct plaintiff suffered severe emotional distress, humiliation and reputational harm along with financial and professional damages.

## COUNT 10
*Negligent Misrepresentation*

97. Plaintiff incorporates paragraphs 1-96 as if fully set forth herein.

98. Defendant in the course of its dealings with plaintiff made false and material representations concerning the requirements for obtaining DOE security clearance their intention to support plaintiff's application and plaintiff's eligibility for salary adjustments training opportunities and fair treatment

99. Defendant had a duty to ensure the accuracy of the information it provided to plaintiff as such information was critical to plaintiff's ability to maintain his employment and fulfill the terms of his agreement with defendant.

100. Defendant breached his duty by negligently making false representations and failing to exercise reasonable care and verifying the accuracy of its statements including its assertion that plaintiffs dual citizenship was a barrier to obtaining security clearance plaintiff reasonably relied on defendants representations acting in good faith by accepting defendants employment complying with defendants demand to renounce his citizenship and continuing to work towards meeting the stated requirements for his position as a direct and proximate result of

defendants negligent misrepresentations plaintiffs suffered substantial harm including the loss of his employment associated wages and benefits emotional distress and reputational harm personal and professional costs of complying with defendants reasonable and unnecessary demands .

101.    Defendants conduct was reckless and negligent, entitling plaintiff to compensatory damages for the harm caused.

**WHEREFORE**, Plaintiff respectfully requests that this court grant the following relief: Economic Damages, including but not limited to back pay including wages salary and benefits loss as a result of defendants unlawful actions front pay for lost future wages and benefits due to plaintiffs inability to return to his former position; Liquidated Damages, Compensatory Damages, Punitive Damages; Equitable Relief; Pre and Post judgment interest at the maximum legal rate; Attorney's fees and costs; and any other legal or equitable relief the court deems just and proper, and necessary to address the harm caused by Defendant's unlawful conduct.

**Respectfully submitted:**

/s/ Michael A. Whitsitt
Michael A. Whitsitt (District Court #12505)
6060 Rivers Avenue
North Charleston, South Carolina 29406
(843)573-8828

**Attorney for Ajay Tiwari**

**December 10, 2024**
**North Charleston, South Carolina**